*Lane, C. J.
The powers of the city council were to establish and regulate markets.
A municipal market consists:
I. ' In a place ior the sale of provisions, and articles of daily consumption.
II. Convenient fixtures.-
III. A system of police regulations, fixing market hours, making provisions for lighting, watching, cleaning, detecting false weights and unwholesome food, and other arrangements calculated to facilitate the intercourse, and insure the honesty, of buyer and seller.
IT. Proper officers to preserve order and enforce obedience to rulers.
The nature of the business transacted in market requires the prompt and efficient action of the police authorities, in cases proper for their interposition. The “due regulation” of a market demands the expenditure of money; and the levying of tolls upon the sellers in market, for the purpose of meeting these expenses incurred mostly for their benefit, is practiced by all municipal corporations. In Cincinnati, the tolls of the stalls, in the market houses, seem to-be submitted to without objection ; but the open spaces, for the accommodation of the more transient frequenters of the market, equally demand the interposition of the city authorities to prepare, pave, and keep them clean, to arrange the stands, preserve order, and enforce rules; and the sellers may be called to contribute to these expenses, in proportion to the accommodation rendered to them, as justly as the occupants of the stalls. The sum exacted for this purpose by the ordinance is called by the defendant’s counsel a tax upon the sale of the commodities brought to market; it is rather the price demanded for accommodations provided to the frequenters of the market, by the city authorities. Although paid into the treasury, it is paid in support *262, 263 of the genera] expenses of the city, of which this is one of the most prominent.
If, then, there be nothing in the nature or object of the demand, *which lies beyond the ordinary powers of municipal cor- [262 porations, we next inquire whether the mode of enforcing it is objectionable. The remedy is complained of as oppressive and tyrannical, imposing fines, and urging executions with more severity and speed than is consonant with our habits, or even with the due ascertainment of facts. But the dealings of the market-house subsist but for the hour, and then property and person are withdrawn from the jurisdiction of the authorities. Hence the prompt and strong enforcement of market regulations becomes necessary, or the object is not obtained; and in all time, from the days of the court of pie poudre to the present, the disputes of the market have been settled on the spot.
Section 4 of the charter confers jurisdiction upon the mayor, for violating city ordinances. That it is sub nomine pcence, in the name of a fine, seems to us not objectionable. The amount, either of the price exacted, or of the penalty (or non-payment, is a matter within the discretion of the authorities; the one will become adjusted by the sense of justice and mutual interest; the other, if honestly designed to enforce obedience, by the adoption of ordinary means to produce this end, ought i.ot to be complained of by one who denies the authority to exact the burden; and both the tax and the means for enforcing its collection, will be kept within bounds by the superintending power of public opinion and the exercise of the right of suffrage.
We find, then, the exertion of no authority except such as is necessary to ihe due administration of city government, and the right of imposing it expressly conferred by the charter.
Judgment reversed.